ON REHEARING[1]
HUGHES, J.
In this action on a promissory note and mortgage, the defendant/borrower appeals *912 a summary judgment dismissing her re-conventional demand, which asserted a negligence claim against the law firm that performed the loan closing. On June 6, 2008, this court handed down an unpublished opinion in this appeal, reversing in part the decision of the trial court. The matter is now before this court on application for rehearing. Having decided the application for rehearing has merit, we grant the rehearing and render the following decision reversing the trial court judgment and remanding the matter.
FACTS AND PROCEDURAL HISTORY
In 2001, Melissa Michelle Perret refinanced the mortgage on her home by executing a promissory note in favor of ABN AMRO Mortgage Group, Inc. (ABN) and an act of mortgage on her home to secure payment of the promissory note. Aaron & Turner, L.L.C. (Aaron & Turner), the law firm that acted as the closing agent for the transaction, disbursed funds to and on behalf of Ms. Perret during the transaction, acting on the belief that ABN had funded the loan.
When it was discovered several years later that Aaron & Turner had never received the funds to finance the transaction from ABN, Aaron & Turner obtained the February 28, 2001 note by ostensible assignment from ABN and demanded payment from Ms. Perret of the total accumulated amount due on the note, plus late fees and interest. When Ms. Perret refused to remit the sum demanded, Aaron & Turner filed a petition in the 19th Judicial District Court on February 17, 2006, seeking to enforce the mortgage and to recover the amounts outstanding on the note, or in the alternative, to recover the amount loaned under the theory of unjust | .¡enrichment. Ms. Perret and Continental Financial Group, Inc. (CFG)[2] were named as defendants in the petition. By a supplemental petition, Aaron & Turner amended its petition to declare Ms. Perret to be in default on the note and sought to recover the total amount of the note, plus late fees, interest, attorney fees, and court costs. Aaron & Turner also subsequently filed a separate proceeding against Ms. Perret for executory process in a different division of the 19th Judicial District Court.[3]
*913 In response to the instant ordinary proceeding, Ms. Perret filed a motion for partial summary judgment seeking to have the trial court dismiss “all rights, claims and causes of action” premised on the February 28, 2001 mortgage and note, declare the mortgage and note null, and order cancellation of the mortgage and note. Ms. Perret subsequently filed a reconven-tional demand seeking compensation for mental, emotional, pecuniary damages, and losses that she allegedly sustained as result of negligence committed by Aaron & Turner in performing the February 28, 2001 loan closing.[4] Aaron & Turner, in turn, filed a motion for summary judgment seeking dismissal of the claims raised by Ms. Perret in her reconventional demand.
|4Following a hearing on the cross motions for summary judgment, held May 14, 2007, the trial court denied Ms. Perret’s partial motion for summary judgment and granted the motion for summary judgment filed by Aaron & Turner, dismissing with prejudice the claims asserted by Ms. Per-ret in her reconventional demand. A judgment to that effect was signed on May 29, 2007, from which Ms. Perret appeals. In this appeal, Ms. Perret contends that the trial court erred in dismissing her recon-ventional demand based on a finding that the note and mortgage at issue in these proceedings were enforceable.
APPELLATE JURISDICTION
This matter comes before us pursuant to a summary judgment granted in favor of Aaron & Turner that was designated as a final judgment by the trial court for purposes of appeal. See LSA-C.C.P. art. 1915(B). The trial court gave no explicit reasons for its determination that no just reason for delay existed, other than the hope that consideration of the underlying judgment could be made in conjunction with review of another appeal pending before this panel under docket number 2007 CA 1425. Since we cannot determine the merits of this appeal unless our jurisdiction is properly invoked by a valid final judgment (see LSA-C.C.P. art.2083), we must make a de novo determination of whether the designation is proper. See R.J. Messinger, Inc. v. Rosenblum, 2004-1664, pp. 13-14 (La.3/2/05), 894 So.2d 1113, 1122.
Some of the factors we are advised to consider in our de novo determination of whether the judgment is properly designated as a final judgment include: (1) the relationship between the adjudicated and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; and (4) miscellaneous facts such as delay, economic and solvency considerations, shortening the time of trial, |5frivolity of competing claims, expense, and the like. R.J. Messinger, Inc., 2004-1664 at 14, 894 So.2d at 1122-23.
Based on our consideration of all the relevant factors, we find the trial court’s designation of the judgment as final is proper.
STANDARD OF REVIEW
A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, *914 show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). On a motion for summary judgment, the burden of proof is on the mover. If the moving party will not bear the burden of proof at trial on the matter, that party’s burden on a motion for summary judgment is to point out an absence of factual support for one or more essential elements of the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and the mover is entitled to summary judgment. LSA-C.C.P. art. 966(C)(2); Robles v. ExxonMobile, 2002-0854, p. 4 (La.App. 1 Cir. 3/28/03), 844 So.2d 339, 341. An appellate court’s review of a summary judgment is de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. R.G. Claitor’s Realty v. Rigell, 2006-1629, p. 4 (La.App. 1 Cir. 5/4/07), 961 So.2d 469, 471-72, writ denied, 2007-1214 (La.9/21/07), 964 So.2d 340.
DISCUSSION
In granting Aaron & Turner’s motion for summary judgment, and consequently denying Ms. Perret’s partial motion for summary judgment, the trial |ficourt found that “consideration” was given for the note.[5] It further found that Aaron & Turner was entitled to judgment as a matter of law based on a judgment declaring the note to be valid that was rendered in the executory process suit filed by Aaron & Turner.
At the outset, we address the apparent application by the trial judge in this case of the doctrine of res judicata, in that the decision he rendered was “primarily based on Judge Calloway’s prior ruling” in the executory process suit. To the extent that the trial judge in this ordinary proceeding relied on a ruling made by the judge in the executory process action, that reliance was in error. The ruling made by the trial judge in the executory proceeding addressed only the propriety of injunctive relief in that summary proceeding. Thus, we do not find the requirements of LSA-R.S. 13:4231 sufficiently satisfied for application of the doctrine of res judicata.
Thus, turning to the merits of the motion for summary judgment, as previously outlined, Aaron & Turner filed the motion for summary judgment to obtain dismissal of Ms. Perret’s reconventional demand. The law firm “pointed out,” as the basis for seeking dismissal of her reconventional demand, that Ms. Perret would not be able to establish that the note and mortgage were invalid. The trial court agreed, stating its finding in open court that “consideration” was given for the note and mortgage, and granting Aaron & Turner’s motion for summary judgment.
*915 17Our review of the pertinent Louisiana Civil Code articles and the record presented herein leads us to conclude that the parties and the trial court were misguided in examining the validity of the promissory note and mortgage at issue herein from the perspective of “consideration.”
“An obligation cannot exist without a lawful cause” LSA-C.C. art.1966 (emphasis added). “Cause is the reason why a party obligates himself.” LSA-C.C. art. 1967 (emphasis added).[6] The comments to Article 1967 state, in pertinent part:
Under this Article, “cause” is not “consideration.” The reason why a party binds himself need not be to obtain something in return or to secure an advantage for himself. An obligor may bind himself by a gratuitous contract, that is, he may obligate himself for the benefit of the other party without obtaining any advantage in return.
LSA-C.C. art.1967, Comment (c) (emphasis added).[7]
Louisiana does not follow the common law tradition that requires consideration to effect an enforceable contract. Rather, the mere will of the parties will bind them, without what a common law court would consider to be consideration to support a contract, so long as the parties have a lawful “cause.” The cause need not have any economic value. Sound/City Recording Corp. v. Solberg, 443 F.Supp. 1374, 1380 (D.C.La.1978).
Unlike the common law analysis of a contract using consideration, which requires something in exchange, the civil law concept of “cause” can obligate a person by his will only. The difference has been analogized to a civilian contract-consent approach compared to a common law contract-bargain approach. | ^Consideration is an objective element required to form a contract, whereas cause is a more subjective element that goes to the intentions of the parties. Therefore, in Louisiana law, a person can be obligated by both a gratuitous or onerous contract. Bains v. Young Men’s Christian Association of Greater New Orleans, 2006-1423, p. 5 (La.App. 4 Cir. 10/3/07), 969 So.2d 646, 649, writ denied, 2007-2146 (La.1/7/08), 973 So.2d 727.
In this case, each party had “cause” to enter into this contract: ABN in furtherance of its business as a money lender, and Ms. Perret in order to accomplish refinancing of her home. Ms. Perret complains only of the fact that ABN did not advance the sums it allegedly agreed to under the terms of the contract between the parties.
Under Louisiana law, nonperformance of a promise constitutes a breach of an obligation, rather than a failure of cause. See Sound/City Recording Corp. v. *916 Solberg, 443 F.Supp. at 1380. Louisiana Civil Code article 1986 provides the remedy for breach of an obligation to do:
Upon an obligor’s failure to perform an obligation to deliver a thing, or not to do an act, or to execute an instrument, the court shall grant specific performance plus damages for delay if the obligee so demands. If specific performance is impracticable, the court may allow damages to the obligee.
Upon a failure to perform an obligation that has another object, such as an obligation to do, the granting of specific performance is at the discretion of the court.
In the instant case, ABN failed to perform the obligation dictated under the contractual provisions to advance the loan funds. Putting aside for the moment the advancement of funds by Aaron & Turner, ABN’s failure to perform (which Ms. Perret has denominated a “failure of consideration”) did not nullify the contractual agreement as asserted by Ms. Perret, but rather entitled her to the recovery of 19damages and/or specific performance in accordance with LSA-C.C. art.1986.[8]
*917 ImHowever, there was performance in this case, though it was made by third party Aaron & Turner. “Performance may be rendered by a third person, even against the will of the obligee, unless the obligor or the obligee has an interest in performance only by the obligor.” LSA-C.C. art. 1855.[9] On this point, the supreme court has stated the following:
In general, the creditor cannot refuse payment offered by a third person whether or not interested in the extinction of the obligation ... A payment made by a third person and accepted by the creditor extinguishes the obligation as definitively as one effected by the debtor personally, except where the third person is legally or contractually subrogated to the rights of the creditor. In the last case, the debtor is discharged toward the original creditor, but the obligation continues to exist in favor of the third person who has been subrogated thereto.
Cox v. W.M. Heroman & Co., 298 So.2d 848, 853 (La.1974) (quoting Aubry & Rau, Obligations, 1 Civil Law Transactions, §§ 315-316, pp. 156-158 (1965)).
Under these precepts, payment of the sums ABN was obligated to pay under the contractual terms by third party Aaron & Turner would constitute performance satisfying ABN’s contractual obligation to Ms. Perret.
However, the more appropriate legal question in the instant suit concerns whether there was a “meeting of the minds” or agreement to contract between ABN and Ms. Perret. The Louisiana Civil Code provides: “A contract is formed by the consent of the parties established through offer and acceptance.” LSA-C.C. art.1927. Consent of the parties is necessary to form a valid contract. Where there is no meeting of the minds between the parties, a contract is void for lack of consent. Stockstill v. C.F. Industries, Inc., 94-2072, p. 25 (La.App. 1 Cir. 12/15/95), 665 So.2d 802, 820, writ denied, 96-0149 (La.3/15/96), 669 So.2d 428.
“A contract is null when the requirements for its formation have not been met.” LSA-C.C. art.2029. A contract to which one party has not consented is a In nullity. See Ferguson v. Dirks, 95-560, p. 5 (La.App. 5 Cir. 11/28/95), 665 So.2d 585, 587.
In this case, whether lender ABN consented to this contract was not established. It is undisputed that Ms. Perret signed the necessary legal documents signifying her consent, while Aaron & Turner partner William Aaron signed on behalf of ABN. *918 In his deposition, Mr. Aaron testified that his firm was “instructed” to sign on behalf of ABN, but he was unable to recall the circumstances of that instruction. However, it appears that Aaron & Turner’s only contact with respect to this transaction was with the loan broker, CFG, and that there was no direct contact with ABN. Moreover, the petition filed by Aaron & Turner stated that loan broker CFG “failed to request or obtain the funding of the loan from [ABN].” While not disposi-tive of the issue, the fact that ABN never funded the loan also militates in favor of a conclusion that ABN did not consent to contract with Ms. Perret. Further, the testimony presented in this case clearly indicates that Aaron & Turner did not intend, to advance the sums disbursed at closing from its own funds, but rather did so on the mistaken belief that ABN had forwarded funds for the closing. No other pleading, deposition, answer to interrogatory, admission on file, or affidavit appearing in the record addresses the issue of whether ABN had, in fact, consented to contract with Ms. Perret.
Ms. Perret’s reconventional demand and subsequent motion for summary judgment sought to have the note and mortgage declared null and void. Aaron & Turner’s cross motion for summary judgment sought the dismissal of Ms. Perret’s reconventional demand, urging that she would be unable to prove at trial that the note and mortgage are null and void. Aaron & Turner’s right to proceed under the note and mortgage is derived solely from the assignment thereof by ABN in its favor, which conveyed to Aaron & Turner only the rights ABN actually had in these contract documents. In order to prevail on the issue of the validity of the 112promissory note and mortgage and its right to executory process thereunder, Aaron & Turner must establish ABN had rights to convey in these contractual documents, i.e. that ABN had actually consented to enter into the contract with Ms. Perret. No evidence was presented to resolve this issue. Hence, we hold that the validity and enforceability of the note and mortgage have not been conclusively established in the record and that therefore Aaron & Turner was not entitled to foreclose, via summary judgment, Ms. Per-ret’s right to a trial on the merits of her reconventional demand. Accordingly we conclude Aaron & Turner failed to show that no genuine issue of material fact remains and that it is entitled to judgment as a matter of law; summary judgment was inappropriately granted in this case.[10]
Furthermore, we find that the trial court erred in dismissing Ms. Perret’s re-conventional demand for the additional reason that Aaron & Turner made no showing to address or defeat Ms. Perret’s claim of negligence. In her reconventional demand, Ms. Perret alleged:
8.
... the remedies sought by the (sic) Aaron <& Turner are derived from [its] negligence in failing to confirm the funding of the loan at the original closing and [its] new, renewed and continuing acts of negligence in failing to discover the failure of ABN AMRO to fund the loan until in or about August, 2005.
*919 9.
Additionally, the over $15,000.00 in interest sought by Aaron & Turner was “earned”, at least in large part, from [clients’] funds.
* * *
11.
The actions of Aaron & Turner have damaged [Ms. Perret] by creating derogatory and defamatory public information which attributes the various claims made by Aaron & Turner to her alleged failures and have and continue to cause her mental and emotional pain and suffering and pecuniary damages including attorney fees and the [ ^threatened loss of her home and expenses incurred in connection therewith.
As the movant on the motion for summary judgment, Aaron & Turner had the burden of proof according to La. C.C.P. art. 966(C)(2); however, because the law firm would not bear the burden of proof at trial on Ms. Perret’s reconventional demand, Aaron & Turner needed only to “point out” to the court that there was an absence of factual support for one or more elements essential to Ms. Perret’s recon-ventional claim for negligence. Although Ms. Perret characterizes her claim as simple “negligence” in her reconventional demand, we observe that based on the facts pled, her claim appears to be one of legal malpractice.[11] To establish a prima facie case for legal malpractice, a plaintiff must prove there was an attorney-client relationship, the attorney was guilty of negligence in his handling of the client’s ease or professional impropriety in his relationship with the client, and the attorney’s misconduct caused the client some loss or damage. Sherwin-Williams Company v. First Louisiana Construction, Inc., 2004-0133, p. 3 (La.App. 1 Cir. 5/6/05), 915 So.2d 841, 844.
In its motion for summary judgment, Aaron & Turner, in an attempt to “point out an absence of factual support for one or more essential elements of’ Ms. Perret’s reconventional demand, simply asserted that “[n]o damages can follow as a matter of law from the proper use of an executory proceeding by a noteholder.” Under the facts of this case, we do not agree. Herein, Aaron & Turner is not simply a noteholder, but also acted as counsel during the closing. A claim for damages can be based on an attorney’s negligence in transacting a closing and does not have to be based on a finding that the note and/or mortgage were invalid or unenforceable. See Sherwin-Williams Company, 2004-0133 at pp. 3-7, 915 So.2d at 844-47; Howard v. Wicker, 94-1245, pp. 6-7 (La.App. 1 Cir. 4/7/95), 653 So.2d 845, 848-49.
Further, the arguments and evidence offered by Aaron & Turner in support of its motion for summary judgment do not specifically address any element of Ms. Perret’s legal malpractice claim as required to shift the burden on the motion to Ms. Perret. The overarching language of the motion attacking Ms. Perret’s recon-ventional demand, alone, is insufficient to establish its burden of proof on the motion. See Hoover v. Hoover, 2001-2200, pp. 7-8 (La.4/3/02), 813 So.2d 329, 333-34. Rath *920 er, Aaron & Turner was required to point out with specificity the lack of proof of an element essential to Ms. Perret’s negligence claim to prevail on its motion for summary judgment. See Pittman v. State Farm Mutual Automobile Insurance Company, 2006-920, pp. 10-11 (La.App. 5 Cir. 4/24/07), 958 So.2d 689, 694-95. See also Sheppard v. City of Baton Rouge, 2002-2421, pp. 8-9 (La.App. 1 Cir. 9/17/04), 897 So.2d 25, 30, writ denied, 2004-2566 (La.1/14/05), 889 So.2d 268. As the mov-ant on the motion for summary judgment seeking dismissal of Ms. Perret’s recon-ventional demand, Aaron & Turner had to show that there was an absence of factual support for an element of Ms. Perret’s legal malpractice claim. Aaron & Turner failed in that regard. Since Aaron & Turner did not make such a showing, the burden of proof never shifted to Ms. Per-ret to show that she can come forward with sufficient proof on the negligence action asserted in her reconventional demand.
Based on these considerations, we conclude that the trial court erred in granting summary judgment in favor of Aaron & Turner.
| ^CONCLUSION
For the reasons stated herein, we grant Melissa Michelle Perret’s application for rehearing, reverse the summary judgment granted by the trial court, and remand this matter for further proceedings consistent with the foregoing. All costs of this appeal are assessed to the appellee, Aaron <& Turner, L.L.C.
REHEARING GRANTED; JUDGMENT REVERSED; REMANDED.
KUHN, J. Concurs.
PETTIGREW, J., concurs with the results and assigns reasons.
GUIDRY, J. concurs and assigns reasons.

. Because the original opinion rendered in this appeal was not designated for publica *912 tion, we repeat herein those portions of the original opinion not changed on this rehearing.

. CFG was the loan broker who allegedly arranged the loan between ABN and Ms. Per-ret. According to the petition, CFG was named as a defendant "in the event that the [n]ote and related mortgage are found to be unenforceable for any reason, CFG would be liable to Aaron & Turner for all amounts Aaron & Turner expended on this loan, due to the negligence of CFG in advising Aaron & Turner that the loan had been funded when in fact CFG had failed to request and obtain funding of the loan.” In response, CFG filed dilatory exceptions of prematurity and improper joinder of parties. A hearing on these exceptions was "passed without date” by the trial court on August 14, 2006 and the record on appeal does not reflect that any further action has been taken in the trial court as to CFG.

. Ms. Perret attempted to enjoin the executo-ry proceedings without success and appealed the trial court’s denial of her petition for injunctive relief to this court; however, because Ms. Perret's home was sold at sheriff's sale before this court could act on her appeal, her appeal of that judgment was dismissed as moot. Aaron & Turner, L.L.C. v. Perret, 2006-2433 (La.App. 1 Cir. 9/14/07), 971 So.2d 1049. Another appeal has been filed in the executory proceeding and is currently before this court on issues related to the disbursement of the sheriff's sale proceeds, which we also decide this date in Aaron & Turner, L.L.C. v. Perret, 2007-1425 (La.App. 1 Cir.5/4/09), - So.3d -, 2009 WL 2857974 (unpublished).

. The basis for the invalidity of the promissory note and mortgage as well as the negligence of Aaron & Turner asserted by Ms. Perret is the fact that ABN did not fund the loan and Aaron & Turner conducted the closing without ensuring that ABN had funded the loan.

. In oral reasons the trial court stated: “I don't agree with Ms. Perret's position that there was a lack of consideration. 1 think the funds were paid and I do think that plaintiff can proceed under this note.... I think, primarily based on Judge Calloway’s prior ruling, plaintiff is entitled to judgment as a matter of law.” When the written judgment was submitted for Judge Morvant’s signature, it contained the following language: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant and plaintiff-in-reconvention, Melissa Michelle Perret received consideration in exchange for her execution of the note and related mortgage attached to the Petition....” (Emphasis added.) Plowever, Judge Morvant crossed out, by hand, that portion of the judgment and initialed the alteration. Nevertheless, we find it unnecessary to resolve this discrepancy in light of our disposition herein.

. Article 1967 further provides: "A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee’s reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.”

. At common law, lack of consideration is a good reason to deny enforceability of a promise. In civilian systems derived from the French, such as the Louisiana system of private law, absence of cause, or unlawfulness or immorality of the cause, is a good reason to deprive an obligation of its legal effect. In the law of Louisiana a promise is enforceable when it gives rise to an obligation with a lawful cause and not because it is supported by a consideration. Moreover, in spite of some confusion created by imprecise language in the Louisiana Civil Code of 1870, it is now clearly explained that cause is not consideration. Saul Litvinoff, Still Another Look At Canse, 48 La. L.Rev. 3, 3, 19 (1987).

. We note that, at the time the pleadings in this suit were filed, LSA-C.C.P. art. 1005 provided:
The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation. [Emphasis added.]
Nevertheless, the inclusion of "failure of consideration” in the text of Article 1005 is not determinative of the issue before this court. When Article 1005 was enacted by 1960 La. Acts, No. 15, the pertinent Louisiana Civil Code articles had not yet been amended. The current versions of LSA-C.C. arts.1966 and 1967 were enacted by 1984 La. Acts, No. 331, which became effective on January 1, 1985. Previously, the precursors to Articles 1966 and 1967, former Articles 1893 and 1896, provided:
Art. 1893. Necessity for cause
An obligation without a cause, or with a false or unlawful cause, can have no effect.
[[Image here]]
Art. 1896. Cause, definition
By the cause of the contract, in this section, is meant the consideration or motive for making it; and a contract is said to be without a cause, whenever the party was in error, supposing that which was his inducement for contracting to exist, when in fact it had never existed, or had ceased to exist before the contract was made. [Emphasis added.]
The 1984 revision of the Civil Code Obligations articles removed all references to "consideration,” and clearly stated that "cause” is not “consideration” in LSA-C.C. art. 1967, Comment (c). Further, we note that Comment (a) to Article 1005 states that "this article is based upon Fed.Rule 8(c).” Federal Rule of Civil Procedure 8(c) provides:
(c) Affirmative Defenses.
(1) In General. In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:
• accord and satisfaction;
• arbitration and award;
• assumption of risk;
• contributory negligence;
• discharge in bankruptcy;
• duress;
• estoppel;
• failure of consideration [emphasis added];
• fraud;
• illegality;
• injury by fellow servant;
• laches;
• license;
• payment;
• release;
• res judicata;
• statute of frauds;
• statute of limitations; and
*917 • waiver.
Thus, we conclude that the inclusion of the terminology “failure of consideration” in LSA-C.C.P. art. 1005 was in accordance with the terminology present in the former Civil Code articles, but that the legislature failed to amend Article 1005 when these Civil Code articles were revised in 1984 to remove the term "consideration” from the explanation of "cause.” While we further note that the term "consideration” now may frequently be found in the Revised Statutes, it appears to be likewise an importation of common law terminology (as in: the Uniform Unclaimed Property Act (LSA-R.S. 9:151 et seq.), the Louisiana Trust Code (LSA-R.S. 9:1721 et seq., to the extent taken from the Uniform Trusts Act), the Louisiana Uniform Electronic Transactions Act (LSA-R.S. 9:2601 et seq.), the Uniform Fiduciaries Law (LSA-R.S. 9:3801 et seq.), the Uniform Commercial Code (LSA-R.S. 10:1-101 et seq.), etc.), or a shorthand method of conveying the Civil Code concept of a bilateral contract in which something of value is conveyed by each party. Moreover, our review of these provisions reveals no intent by the legislature to change or modify the Civil Code principles cited herein.

. Article 1855 further provides: "Performance rendered by a third person effects subro-gation only when so provided by law or by agreement.”

. Although Ms. Perret asserts the note and mortgage are void and unenforceable because she contends that consideration was not given, clearly the validity of these contractual documents has been raised and the fact that this court renders its decision citing a different possible defect (i.e. failure of consent) is of no moment, considering this court’s duty to review the motion for summary judgment de novo using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. See R.G. Claitor's Realty v. Rigell, 2006-1629 at p. 4, 961 So.2d at 471-72.

. Louisiana has chosen a system of fact pleading. LSA-C.C.P. art. 854, Official Revision Comments-1960, comment (a). Therefore, it is not necessary for a plaintiff to plead the theory of the case in the petition.